UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JEANNETTE LOGAN,<br><br>    Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A., WILMINGTON SAVINGS FUND SOCIETY, FSB, d/b/a CHRISTIANA TRUST, not in its individual capacity, but solely as trustee for BCAT 2015-14TT,<br>    Defendants. | Civil Action No.: 19-cv-11483 |

## MEMORANDUM AND ORDER

CASPER, J.                              March 16, 2020

### I. Introduction

Plaintiff Jeannette Logan ("Logan") has filed this lawsuit against Defendant Bank of America, N.A. ("Bank of America") alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA") and the Massachusetts Credit Reporting Act, Mass. Gen. L. c. 93 §54A ("MCRA") and against Defendant Wilmington Savings Fund Society, FSB, doing business as Christiana Trust, not in its individual capacity, but solely as trustee for BCAT 2015-14TT ("Wilmington"), alleging violations of the Massachusetts Debt Collection Act, 940 CMR 7.00 et seq. ("MDCA"). D. 4 at ¶¶ 58-73. Bank of America and Wilmington have each moved to dismiss the claims against them pursuant to Fed. R. Civ. P. 12(b)(6). D. 10; D. 22. For the reasons stated below, the Court DENIES Bank of America's motion to dismiss, D. 10, as to Claim I and ALLOWS it as to Claim II and ALLOWS Wilmington's motion to dismiss, D. 22.

## II. Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted).

The Court will dismiss a pleading that fails to include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" García-Catalán, 734 F.3d at 102 (quoting Fed. R. Civ. P. 8(a)(2)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557) (alteration in original). "In determining whether a [pleading] crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.'" García-Catalán, 734 F.3d at 103 (alteration

in original) (citation omitted). "This context-specific inquiry does not demand 'a high degree of factual specificity.'" Id. (citation omitted).

## III. Factual Background

The allegations recounted here are taken from the amended complaint, D. 4, unless otherwise noted, and are accepted as true for the purposes of considering these motions. Logan purchased the residential property in Brockton, Massachusetts at issue here (the "Property") in 1998. D. 4 ¶ 14. Logan refinanced the mortgage on the Property with Fleet National Bank ("Fleet") in or around 2002. D. 4 ¶ 15. At that time, she obtained a first mortgage for $116,000 and a home equity line of credit for $90,000. Id. Bank of America merged with Fleet sometime between 2002 and 2006 and took over Logan's first mortgage and line of credit. D. 4 ¶ 16. On or around September 28, 2006, Bank of America recorded a discharge of the $90,000 line of credit security instrument in Plymouth County, Massachusetts. D. 4 ¶ 17.

Logan executed a new $125,000 line of credit with Bank of America on July 14, 2006, which was recorded on or around October 23, 2006. D. 4 ¶ 18. On or around March 5, 2008, Bank of America modified the security instrument to reflect an increase in Logan's home equity line of credit to $155,000. D. 4 ¶ 19. This modification was recorded on May 1, 2008. Id. On or around August 3, 2012, Logan received a letter from Bank of America stating that Logan's "Home Equity account" was approved for "participation in a principal forgiveness program offered as a result of the Department of Justice and State Attorneys General global settlement with major mortgage servicers" ("Discharge Letter"). D. 4 ¶ 20.

On or about September 16, 2015, Bank of America assigned "all beneficial interest under" the account to Wilmington and then filed an "Assignment of Open-end Mortgage" with the Plymouth County Registry of Deeds on or around October 27, 2015. D. 4 ¶ 21, 23. Logan alleges that "there is a contract and agency relationship" between Wilmington and Bank of America. D. 4

3

¶ 22. On or around September 21, 2015, Bank of America recorded a "Discharge of Mortgage" for the "mortgage from Jeannette Logan . . . to [Bank of America] dated 07/14/2006 recorded on 10/23/2006 with Plymouth County Registry of Deeds." D. 4 ¶ 24. The "Discharge of Mortgage" also acknowledged "satisfaction" of the "[m]odification dated 03/05/2006." Id. As a result of the filing of the notice of the discharge of her 2006 mortgage with Bank of America, Logan ceased making further payments towards the Account. D. 4 ¶ 26. In support of its motion to dismiss, Bank of America claims that the discharge of the 2006 mortgage was "erroneously and inadvertently executed" and that it was "recorded by mistake." D. 11 at 3-4.

In or around December 2017, Logan began to look into obtaining a reverse mortgage, but the lender she consulted with informed her that she did not qualify because there was "negative reporting" for the Bank of America account (the "Account") indicating that the Account was past due, that there were late payments and that a substantial balance was owed. D. 4 ¶ 27. Logan mailed letters to the three credit reporting agencies ("CRAs")−Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian") and Trans Union, LLC ("TransUnion")−disputing the inaccurate reporting of the Account. D. 4 ¶ 29. Logan alleges that these disputes were forwarded to Bank of America. D. 4 ¶ 30. TransUnion and Experian responded to Logan's inquiries indicating that they would continue to report the Account as late, with TransUnion reporting a balance of zero and Experian listing an outstanding balance of $172,711 with $10,145 past due. D. 4 ¶¶ 31-32. Experian told Logan in a phone call that Experian had contacted Bank of America and that the bank had indicated that the account was being reported correctly. D. 4 ¶ 34.

On or around November 6, 2018, Logan sent letters to each of the CRAs enclosing the Discharge Letter from Bank of America and disputing their reporting of the Account as being late

4

and having an outstanding balance. D. 4 ¶ 38. TransUnion responded that it had removed the Account from Logan's credit report. D. 4 ¶ 39. Equifax and Experian both responded that the prior reporting was correct, continued to report the Account as late and with a past due balance and also reported that foreclosure proceedings had started. D. 4 ¶¶ 40, 41. According to Logan, foreclosure proceedings have never been initiated. D. 4 ¶ 42. Logan further alleges that Bank of America failed to investigate properly her disputes and that it continued to report inaccurate information to the CRAs. D. 4 ¶¶ 45-46. Logan alleges that this has caused her credit score to decrease, has substantially increased her outstanding debt and has prevented her from obtaining new credit or a new mortgage. D. 4 ¶ 48.

As assignee of the Account from Bank of America, Wilmington filed suit against Logan in the Massachusetts Land Court on or around July 11, 2018 seeking to collect the unpaid balance on the Account. D. 4 ¶¶ 49-50. Logan filed a crossclaim against Bank of America in that proceeding alleging violations of 940 C.M.R. § 7.00. D. 4 ¶ 51. The Land Court dismissed the crossclaim without prejudice, finding that it did not have subject matter jurisdiction over claims that were unrelated to title to the Property. D. 4 ¶ 52.

### IV. Procedural History

Logan initiated this action against Bank of America on July 8, 2019, D. 1, and filed an amended complaint adding Wilmington as a defendant the next day, D. 4. Bank of America and Wilmington each have moved to dismiss. D. 10; D. 22. The Court heard the parties on the pending motions and took the matters under advisement. D. 27.

## V. Discussion

### A. Logan's FCRA and MCRA claims (Counts I and II)

*1. The FCRA Claim*

Logan asserts a claim against Bank of America for violations of the FCRA based upon allegations that Bank of America failed to investigate properly reports of inaccurate information on Logan's credit reports and furnished inaccurate information to the CRAs. See D. 4 ¶¶ 58-62. The FCRA requires that furnishers of information to CRAs, such as Bank of America in this context, "may not provide inaccurate information to consumer reporting agencies[] and also have specific duties in the event of a dispute over furnished information." Chiang v. Verizon New Eng., Inc., 595 F.3d 26, 35 (1st Cir. 2010) (internal citations omitted). Pursuant to the FCRA, when a consumer notifies a CRA of a dispute regarding their credit report and the CRA reports the dispute to the furnisher as required, the furnisher must:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency . . . . ;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation . . . , for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--(i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1); Chiang, 595 F.3d at 36. Under the FCRA, an investigation by a furnisher must be reasonable. Austin v. Pawtucket Credit Union, 18-cv-10699-FDS, 2019 WL

3935185, at *3 (D. Mass. May 17, 2019). "[T]he reasonableness of the investigation is to be determined by an objective standard." Chiang, 595 F.3d at 37. "The fact that a furnisher's investigation was 'incomplete or inaccurate' is not enough to show unreasonableness—rather, 'the incompleteness must be such as to make the furnished information misleading in a material sense.'" Austin, 2019 WL 3935185, at *3 (quoting Chiang, 595 F.3d at 36-37). "To prevail in a suit brought pursuant to the FCRA, the consumer must prove that the furnisher, once notified of a dispute by the CRA, failed to conduct a reasonable investigation into the accuracy of the disputed information, in light of the information provided to it by the CRA." Camacho v. J.P. Morgan Chase, No. 14-cv-30042-MGM, 2015 WL 3872332, at *4 (D. Mass. June 23, 2015) (quoting Allicon v. Verizon Wireless, No. 11–cv–007–SM, 2011 WL 2357600, *4 (D.N.H. June 9, 2011)). Here, Logan has plausibly alleged a FCRA claim where she has alleged that Bank of America was notified of the disputes by the CRA, failed to reasonably investigate the disputes and continued to report misleading information to the CRAs regarding the status of Logan's mortgage and home equity line of credit.

Specifically, Logan alleges that Bank of America was informed of the disputed reports, noting that a representative from Experian informed Logan that Experian had contacted Bank of America regarding the dispute and that Bank of America had confirmed that Experian's reporting of the account as outstanding and past due was accurate. D. 4 ¶ 34. Bank of America argues that Logan's FCRA claim must be dismissed because the Discharge Letter only applied to Logan's 2003 loan and, therefore, Logan "does not and cannot plausibly allege that she paid off" the loan secured by the 2006 mortgage and was thus relieved of her obligation to continue making payments. D. 11 at 6. Logan counters that, at the time she received the Discharge Letter, she only had one mortgage and one equity line of credit and, therefore, she reasonably relied upon the

7

representation in the letter as applying to relieve all her outstanding obligations under the 2006 loan. See D. 13 at 5.

Logan also argues that, even if the Discharge Letter applied only to the 2003 loan and not the 2006 loan, Bank of America filed a discharge of the 2006 mortgage with the Plymouth County Registry of Deeds. D. 13 at 5. Logan contends that, pursuant to Mass. Gen. L. c. 183, § 54B[1], Bank of America's admittedly erroneous filing of the discharge of the 2006 mortgage was binding such that it no longer had a legal interest in the Property. D. 13 at 9. Bank of America correctly notes that discharge of a mortgage is distinct from the underlying debt that the mortgage secures. That is, despite the discharge of the mortgage, Logan still owed on the underlying debt. D. 11 at 3-4; Condado 3 CFL, LLC v. Ramón Reyes-Trinidad, 312 F. Supp. 3d 255, 260 (D. P. R. 2018) (noting that "[a] mortgage is distinct from the underlying debt" and "the mortgage . . . is the guarantee which gives rise to a mortgage foreclosure suit to collect from the very property that secured the debt"). The discharge of the mortgage, however, terminated Bank of America's interest in the Property securing the 2006 loan. Despite this termination, Logan alleges that Bank of America continued to report the Account to the CRAs as a "mortgage" and "real estate" account. D. 13 at 9. Further, even though the mortgage discharge terminated Bank of America's interest in the Property, Logan alleges that Bank of America incorrectly reported to the CRAs that the mortgage was subject to foreclosure even though foreclosure proceedings had not been initiated. D. 4 ¶¶ 40-42; D. 11 at 6-7.

For all of these reasons and based on the facts alleged in the amended complaint taken as true and viewed in the light most favorable to Logan, Logan has plausibly alleged that Bank of

---

[1] Mass. Gen. L. c. 183, § 54B states that "[n]otwithstanding any law to the contrary, (1) a discharge of mortgage . . . if executed . . . shall be binding upon such entity and shall be entitled to be recorded, and no vote of the entity affirming such authority shall be required to permit recording."

America violated the FCRA by failing to conduct a reasonable investigation of the reported disputes and provide accurate reports to the CRAs. Accordingly, the Court denies Bank of America's motion to dismiss as to Count I.

2. *The MCRA Claim*

Logan also brings a claim under MCRA, Mass. Gen. L. c. 93, § 54A(a), the Massachusetts equivalent of the FCRA, based on substantially the same facts supporting the FCRA claim. See D. 4 ¶¶ 64-70. Defendants argue that this claim should be dismissed for the same reasons supporting dismissal of the FCRA claim. D. 11 at 8. Mass. Gen. L. c. 93, § 54A(a) provides that "[e]very person who furnishes information to a consumer reporting agency shall follow reasonable procedures to ensure that the information reported to a consumer reporting agency is accurate and complete" and "[n]o person may provide information to a consumer reporting agency if such person knows or has reasonable cause to believe such information is not accurate or complete." Section 54A(g) provides a private right of action against those who violate Section 54A(a) of the statute. Mass. Gen. L. c. 93, § 54A(g); see Leet v. Cellco Partnership, 480 F. Supp. 2d 422, 433 (D. Mass. 2007). The preemption provision in the FCRA, which states that "[n]o requirement or prohibition may be imposed under the laws of any State . . . relating to the responsibilities of persons who furnish information to consumer reporting agencies" specifically includes an exemption for Section 54A(a) of the MCRA but does not include an exemption for Section 54A(g). See 15 U.S.C. § 1681t(b)(1)(F); Kuppserstein v. Bank of Am., Nat'l Ass'n, 14-cv-13766-GAO, 2015 WL 4601704, at *3 (D. Mass. July 31, 2015).

There is some disagreement within this district as to whether the provision permitting private claims under MCRA is preempted by the FCRA, with most judges who have considered the issue concluding that preemption applies to Section 54A(g). In Kuppserstein (O'Toole, J.), the

9

Court concluded that preemption applies to Section 54A(g) because the FCRA contains an exemption for Section 54A(a) only and not Section 54A(g) and, therefore, the Attorney General is empowered to bring a civil suit to enforce Section54A(a), but private rights of action are preempted. Kuppserstein, 2015 WL 4601704, at *3. Prior to this ruling, in 2005, in Gibbs v. SLM Corp., 336 F. Supp. 2d 1 (D. Mass. 2004) (Saris, J.), aff'd, No. 05-1057, 2005 WL 5493113 (1st Cir. Aug. 23, 2005), the Court stated that "[w]here, as here, the FCRA does not exempt the state law provision expressly authorizing a private cause of action, such private causes of action remain preempted" in concluding that Section 54A(g) was preempted under the FCRA. Gibbs, 336 F. Supp. 2d at 13. Additionally, in Islam v. Option One Mortg. Corp., 432 F. Supp. 2d 181 (D. Mass. 2006) (Young, J.), the Court relied upon Gibbs and the parties' representations that the Attorney General could enforce Section 54A(a) in determining that the private right of action under Section 54A(g) was preempted. Islam, 432 F. Supp. 2d at 188-89; see Leet, 480 F. Supp. 2d at 433 (Saylor, C.J.) (citing Gibbs and Islam in concluding that the plaintiff's claim under Section 54A(g) is preempted). In contrast, the court in Catanzaro v. Experian Info. Sols., Inc., 671 F. Supp. 2d 256 (D. Mass. 2009) (Gorton, J.) acknowledged that the FCRA explicitly exempted Section 54A(a) and not Section 54A(g), but declined to apply preemption where there was no clear indication that the Attorney General has "the requisite authority" to enforce Section 54A(a)). Catanzaro, 671 F. Supp. 2d at 260-61. This Court agrees with the Gibbs line of cases that, where the FCRA exempts Section 54A(a), but not Section 54A(g), preemption applies to private rights of action under the MCRA. Accordingly, the Court allows Bank of America's motion to dismiss as to Count II.

### B. Logan's MDCA Claim Against Wilmington (Count III)

Logan also brings a claim against Wilmington alleging violations of the MDCA, 940 C.M.R. § 7.00 et seq., based upon Wilmington's initiation of proceedings in the Massachusetts

10

Land Court seeking to collect on the loan associated with the mortgage that was discharged by Bank of America. D. 4 ¶¶ 71-73; D. 24 at 8-9. Logan argues that Wilmington's violations of the MDCA constitute a *per se* violation of Mass. Gen. L. c. 93A ("Chapter 93A"). D. 4 ¶ 72. Although there is no private right of action under the MDCA, the regulations "provide guidance on what constitutes an unfair or deceptive act or practice by establishing standards for the collection of debts in Massachusetts." In re Porst, 480 B.R. 97, 110 (Bankr. D. Mass. 2012), aff'd, No. BAP 12-080, 2013 WL 7118196 (B.A.P. 1st Cir. Nov. 20, 2013); see 940 C.M.R. § 7.01. Chapter 93A, therefore, provides Logan a private right of action with respect to her allegations that Wilmington's violation of the regulation was unfair and deceptive. See Jones v. NCO Fin. Servs., No. 13-cv-12101-DJC, 2014 WL 6390633, at *4 (D. Mass. Nov. 14, 2014) (granting motion for judgment on the pleadings as to 940 CMR § 7.00 claim but noting that "[a] private right of action still exists under [Chapter 93A]"); Dean v. Compass Receivables Mgmt. Corp., 148 F. Supp. 2d 116, 119 (D. Mass. 2001).

Wilmington further argues that Logan does not have a valid claim because Wilmington was permitted to pursue foreclosure against the Property and, therefore, Logan cannot plausibly allege that, Wilmington made a "false or misleading representation as to the character, extent or amount of the debt, or as to its status in any legal proceeding" in filing the foreclosure action. D. 23 at 6-8 (citing 940 C.M.R. § 7.07(2)). As discussed previously, Wilmington's contention that, despite the discharge of the mortgage, Logan still owed on the underlying debt and, thus, Wilmington was permitted to initiate foreclosure proceedings is unavailing. Logan alleges, and Bank of America admits, that Bank of America discharged the 2006 mortgage and home equity line of credit. D. 4 ¶¶ 24-25; D. 11 at 3. Pursuant to the discharge of the mortgage, Bank of America and, as its assignee, Wilmington, no longer had an interest in the Property. Accordingly,

Logan has adequately alleged that Wilmington, in initiating foreclosure proceedings on the Property in which it had no interest, violated the regulations and, in turn, Chapter 93A.

Finally, Wilmington contends that, to the extent Logan argues that she has a private right of action based on her reference to Chapter 93A, the claim should be dismissed because Logan failed to send Wilmington a written demand for relief as required under the statute. D. 23 at 5; see Mass. Gen. L. c. 93A, § 9(3). Logan argues that the provision of Mass. Gen. L. c. 93A, § 9 that states that the demand requirement "shall not apply if the claim is asserted by way of counterclaim or cross-claim" applies here because Logan's claim against Wilmington was initially brought as a cross-claim in the Land Court action initiated by Wilmington. D. 24 at 10. Although Wilmington initiated the Land Court action, Logan brought her crossclaim in that action alleging violations of the MDCA against third-party defendant Bank of America, without naming Wilmington in the crossclaim. D. 4 ¶ 51. The Land Court dismissed the claim without prejudice for lack of subject matter jurisdiction and Logan asserted her claim against Wilmington in the amended complaint she presses in this action. D. 4 ¶ 52. Logan, relying on Bump v. Robbins, 24 Mass. App. Ct. 296, 314 (1987), argues that "claims asserted against Bank of America may be imputed to Wilmington" based on an alleged agency relationship between the two entities. D. 24 at 10 (citing Bump, 24 Mass. App. Ct. at 314). The Court disagrees and Bump does counsel otherwise. Bump, 24 Mass. App. Ct. at 314 (ruling that a parent company could be held liable for a subsidiary's violations of Chapter 93A where there had been a "de facto merger" between the two entities). Unlike the entities in Bump, the relationship between Bank of America and Wilmington is as assignor and assignee and thus is not analogous to de facto merger between the entities in Bump and, at any rate, does not exempt Logan from the demand requirement to Wilmington under Mass. Gen. L. c. 93A, § 9 where "[t]he statutory notice requirement is not merely a procedural nicety, but, rather,

12

'a prerequisite to suit.'" Young v. Wells Fargo Bank, N.A., 828 F.3d 26, 33 (1st Cir. 2016) (quoting Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 19 (1st Cir. 2004)). Accordingly, the Court allows Wilmington's motion to dismiss Claim III without prejudice.

## VI. Conclusion

For the foregoing reasons, the Court DENIES Bank of America's motion to dismiss, D. 10, as to Claim I and ALLOWS the motion to dismiss as to Claim II, and ALLOWS Wilmington's motion to dismiss Claim III, D. 22, without prejudice.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge